## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OLANREWAJU ODEDEYI,

               *Plaintiff,*

    v.

AMTRUST FINANCIAL SERVICES, INC., et al.,

               *Defendants.*

CIVIL ACTION

NO. 23-2452

**Pappert, J.**                                                              **November 20, 2023**

### MEMORANDUM

Security National Insurance Company insured Timmy Graham doing business as Graham Builders & Construction ("GBC") under a commercial general liability policy. Olanrewaju Odedeyi hired GBC to perform renovation work at his property. But GBC's work was defective, and Odedeyi sued GBC, among other parties, in state court alleging negligence and faulty workmanship. After obtaining a default judgment against GBC, Odedeyi filed this lawsuit against Security National.

Odedeyi and Security National both move for summary judgment on the issue of whether Security National has a duty to defend or indemnify GBC. [1] After reviewing

---

[1]     Security National also argues it is entitled to summary judgment because coverage is precluded by the policy's "Exclusions" section, it did not have notice of Odedeyi's claim against GBC during the policy period, and Odedeyi is not able to maintain a direct action against Security National. *See* (Defs.' Mot. for Summ. Judgment, pp. 19-24, ECF 15-3). While each of these arguments has merit, the Court need not take them up in full because Odedeyi's factual allegations in his underlying litigation against GBC do not constitute an "occurrence" triggering coverage under Security National's policy.

the record and the parties' submissions, the Court grants Security National's motion and denies Odedeyi's.

I

In 2019, Odedeyi hired GBC to perform renovation work at his property at 2864 Mercer Street in Philadelphia.  (Odedeyi CCP Compl., Exhibit C, p. 4, ECF 6-3).  GBC's work was defective.  (*Id*. at ¶ 7).  Specifically, GBC failed to rebuild the chimney after removing it during demolition, failed to rebuild concrete pads damaged during renovation, and various plumbing, electrical and roofing work was defective and, in some instances, failed to comply with applicable codes.  (*Id*. at ¶¶ 11-17; ¶¶ 19-27).  The faulty plumbing and roof repairs caused water damage and leakage to the property, which GBC agreed to fix. (*Id*. at ¶¶ 27-29).

The City of Philadelphia revoked GBC's contractor license in June 2019.  Edit Graham subsequently created the Construction Group Limited Liability Company ("TCG") which assumed the responsibilities of GBC and operated under Timmy Graham.  (*Id*. at ¶¶ 30, 34-36, 49-51, pp. 7-9, ECF 6-3). TCG performed defective work on the property as well.  (*Id*. at 48).

GBC was insured under a Security National commercial general liability policy with a term of August 13, 2018 through August 13, 2019.  (Exhibit A at 4, ECF 6-1) ("Policy").  The Policy obligated Security National to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" only if "caused by an 'occurrence' that takes place in the 'coverage territory.'" (*Id*. at 26, 60).  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id*. at 39).

2

In April 2023, Odedeyi sued GBC, among other parties, in the Philadelphia County Court of Common Pleas. *Odedeyi v. Graham Builders & Construction Co.*, *et al,* CCP Philadelphia County, April Term 2023, No. 1979.  On May 22, 2023, the court entered a default judgment against GBC in the amount of $3,600,000.  (Amd. Complaint ¶ 40, p. 7, ECF 6-5).  Three days after GBC's default, Odedeyi sued Amtrust Financial Services and Security National in the Philadelphia Court of Common Pleas, and Defendants timely removed the case to this Court.  (ECF 1).  The Court previously resolved multiple motions and dismissed Amtrust by voluntary stipulation of the parties. (ECF 41).

## II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  *Smathers v. Mutli-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *see also Goodman Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).  "The rule is no different where there are

cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "When confronted with cross-motions for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Perez v. Kwasny*, 159 F. Supp. 3d 565, 569 (E.D. Pa. 2016) (quoting *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003)).

## III

Under Pennsylvania law, "the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007)); *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 897 (Pa. 2006) ("The interpretation of an insurance contract is a question of law"). "When the language of the policy is clear and unambiguous, we must give effect to that language." *Baumhammers*, 938 A.2d at 290. If the language of the policy is ambiguous, the policy must be construed against the insurer. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999).

Odedeyi claims Security National had a duty to defend and indemnify GBC in the underlying litigation. The duty to defend is broader than the duty to indemnify, *Frog, Switch & Mfg. Co. v. Travelers Ins. Co*, 193 F.3d 742, 74 (3d Cir. 1999), and that duty is assessed by comparing the underlying complaint to the insurance policy. Factual allegations in the complaint are taken as true and liberally construed in favor

of the insured.  *Frog*, 193 F.3d at 746 (citing *Biborosch v. Transamerica Ins. Co.*, 412 Pa. Super. 505, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)).

The duty to defend arises if "the allegations in the complaint . . . could potentially fall within the coverage of the policy." *Air Prods. & Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 179 (3d Cir. 1994).  In assessing that duty, the Court focuses on the factual allegations contained in the complaint, rather than the causes of action.  *See Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 745 (Pa. 1999).  "Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

To decide whether the duty to defend is triggered, the Court first examines the language of the insurance policy to determine the scope of coverage.  *See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009).  Next, the Court analyzes the complaint in the underlying litigation to determine if those claims potentially fall within the scope of the policy's coverage. *See id.*; *see also Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 692 (E.D. Pa. 2012).

## A

In *Kvaerner Metals Division of Kvaerner U.S., Inc., v. Commercial Union Insurance Co.*, 589 Pa. 317, 908 A.2d 888 (Pa. 2006), the insured, Kvaerner, entered into an agreement with the Bethlehem Steel Corporation to design and construct a coke oven battery. 908 A.2d at 891.  Bethlehem Steel sued Kvaerner for breach of contract and warranty for the faulty design and construction of the battery. *Id.*  Kvaerner

notified its insurance carrier, but the carrier disclaimed coverage because the policy, like Security National's, only covered property damage caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." *Id.* at 897.

The Pennsylvania Supreme Court held that the alleged damage to Bethlehem Steel's property was caused by the faulty workmanship of Kvaerner, which was not an "occurrence" within the meaning of the policy.  *Id.* at 899.  The court reasoned that an "accident" required a degree of fortuity not covered by faulty workmanship, and that this type of policy does not cover "contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." *Id.* at 898-99. Thus, the insurer had no duty to defend Kvaerner against a lawsuit alleging only property damage from poor workmanship.  *Id.* at 900.

The Third Circuit Court of Appeals has interpreted *Kvaerner* and its progeny to stand for the proposition that claims based on faulty workmanship do not constitute an "occurrence," and thus do not trigger an insurer's duty to defend.  *See, e.g., Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010); *see also Westfield Ins. Co.*, 856 F. Supp. 2d at 702 ("Under well-established Pennsylvania law, claims of and damage resulting from faulty workmanship do not have a sufficient degree of fortuity").  Faulty workmanship, "even when cast as a negligence claim," does not constitute an "occurrence." *Specialty Surfaces*, 609 F.3d at 231.  Moreover, "damages that are a reasonably foreseeable result of the faulty workmanship are also not covered[.]" *Specialty Surfaces*, 609 F.3d at 238-39.

6

B

Even liberally construing the factual allegations here and resolving all doubts as to coverage in favor of the insured, Security National had no duty to defend GBC. Whether the claims are couched as negligence or breach of contract, the underlying litigation concerned defective renovations and repairs.  Odedeyi argues the promise to rebuild the chimney and concrete pads was beyond the scope of the contracted work and therefore an "occurrence," and the faulty workmanship resulting in property damage to property other than the work product itself—including water damage and leakage— was also an "occurrence."  (Amd. Compl. ¶¶ 12, 15, 29; Pl.'s Mot. for Summ. Judgment, p. 7, ECF 13).  But Odedeyi's factual allegations mirror those in which the Third Circuit Court of Appeals has refused to find a duty to defend.  *See Specialty Surfaces*, 609 F.3d. 223 (finding contractor's failure to properly install synthetic turf fields and accompanying drainage system which caused property damage beyond the work itself did not give rise to a triggering occurrence because it was not the result of an accident or unexpected event).  Whether damage is within or outside the scope of the contracted renovation is "irrelevant so long as both foreseeably flow from faulty workmanship." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.,* 939 F.3d 243, 256 (3d Cir. 2019). Odedeyi's factual allegations in the underlying litigation, including those about defective renovations outside the scope of the contracted work and collateral property

damage, do not trigger an "occurrence" under Security National's Policy.[2]

      An appropriate Order follows.

                          BY THE COURT:

                          ***/s/ Gerald J. Pappert***
                          GERALD J. PAPPERT, J.

---

[2]     Odedeyi also argues Security National waived certain coverage defenses because, *inter alia*, it was delayed in disclaiming coverage on June 15, 2023, after default was entered against GBC in the underlying litigation. *See* (ECF 18, pp. 17-20). But under Pennsylvania law, "the doctrine of waiver or estoppel cannot create [coverage] where none existed." *Gemini Ins. Co. v. Meyer Jabara Hotels LLC,* 231 A.3d 839, 851 (Pa. Super. 2020) (citing *Wasilko v. Home Mut. Cas. Co*, 210 Pa. Super. 322, 232 A.2d 60, 63 (1967).